UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA, *Plaintiff*, v. CONSOL ENERGY INC., *Defendant.* ——————————————— HELVETIA COAL CO., et al., *Plaintiffs*, v. INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA, *Defendant.* | Civil Action No. 1:20-cv-01475 (CJN) Civil Action No. 1:20-cv-01476 (CJN) |

**MEMORANDUM OPINION**

In June 2020, the Southern District of West Virginia transferred two consolidated cases to this District. Mem. Op. and Order ("Transfer Op."), ECF No. 119. In the first, International Union, United Mine Workers of America ("UMWA") seeks to enforce a 2017 arbitration award against CNX Resources Corporation, formerly known as CONSOL Energy Inc. ("CONSOL"). *See generally* 2d Am. Compl., ECF No. 78. In the second, former subsidiaries of CONSOL seek to vacate the same award. *See generally Helvetia Coal Co. v. United Mine Workers of Am., Int'l Union*, No. 1:20-cv-01476, Am. Compl., ECF No. 25.

1

Pending before the Court are three motions. In the first case, UMWA moves to amend its Second Amended Complaint to add as Defendants those former CONSOL subsidiaries that are Plaintiffs in the second case. Pl.'s Mot. 3d Am. Compl., ECF No. 131. In the second case, UMWA moves to amend its Answer to include a counterclaim seeking enforcement of the award. Def.'s Mot. Am. Answer, ECF No. 132. Finally, third parties involved in the arbitration at issue move to quash a subpoena seeking deposition testimony regarding the arbitration process. Mot. Quash, ECF No. 138. For the reasons explained below, the Court grants all three motions.

## I.  Background

The now-consolidated cases before the Court have a long factual and procedural history, most of which has already been summarized by the Southern District of West Virginia. *See generally* Transfer Op.

As relevant to the pending motions, in December 2016, UMWA filed suit in the Southern District of West Virginia seeking an injunction to prevent CONSOL from unilaterally terminating a group health insurance plan. Compl. ¶ 1, ECF No. 1. The plan at issue was governed by a labor agreement between UMWA and a multiemployer bargaining association called the Bituminous Coal Operators' Association. Transfer Op. at 2–3. That agreement provided certain healthcare benefits to retired coal miners on a permanent lifetime basis and required that disputes be referred to the Trustees of the UMWA 1993 Benefit Plan ("Trustees") for arbitration in what the Parties refer to as a resolution of disputes mechanism. Mem. Op. and Order ("Inj. Op.") at 3–4, ECF No. 50.

In January 2017, UMWA amended its Complaint to add as Defendants four former CONSOL subsidiaries: Helvetia Coal Company, Island Creek Coal Company, Laurel Run Mining Company, and CONSOL Amonate Facility, LLC (together the "Subsidiaries"). Am. Compl. ¶ 1, ECF No. 16. The Subsidiaries were added to the case on the theory that they are "in active concert

2

or participation with" CONSOL with respect to the conduct at issue. *Id.* ¶ 4. The Subsidiaries moved to dismiss for lack of personal jurisdiction and improper venue, or, in the alternative, to transfer the case to the Western District of Pennsylvania where a related case was pending. Defs.' Mot. Dismiss or Transfer at 1–2, ECF No. 40. The Southern District of West Virginia dismissed the Subsidiaries for lack of personal jurisdiction because, although the Subsidiaries conducted mining operations in the state in the past, they lacked sufficient contacts with West Virginia. Inj. Op. at 10–11, 25.

The arbitration was conducted in Washington, D.C., and in October 2017, the Trustees issued an award in favor of UMWA. Transfer Op. at 6, 50. Thereafter, UMWA sought both to add the Subsidiaries again as Defendants and to add causes of action to enforce the arbitration award pursuant to Section 301 of the Labor Management Relations Act of 1974 ("LMRA"), 29 U.S.C. § 185, and Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3). Transfer Op. at 6–10.

The Subsidiaries responded to the Trustees' decision in two ways: first, they moved to dismiss UMWA's Second Amended Complaint for lack of jurisdiction, Subsidiaries' Mot. Dismiss Pls.' 2d Am. Compl., ECF No. 98; and second, they filed suit in the Western District of Pennsylvania to vacate the arbitration award, *Helvetia Coal Co. v. United Mine Workers of Am., Int'l Union*, No. 1:20-cv-01476, Compl., ECF No. 1.

The Western District of Pennsylvania transferred the action seeking vacatur to the Southern District of West Virginia, which ultimately consolidated the cases, Transfer Op. at 55–57; declined to exercise personal jurisdiction over the Subsidiaries, *id.* at 47–49; and transferred the consolidated cases to this District, *id.* at 59–63.

3

## II.   Amended Pleadings

### A.   Legal Standard

Rule 15 permits a party to amend its pleading once as a matter of course within twenty-one days of serving it or within twenty-one days of the filing of a responsive pleading. *See* Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend its pleading only with the opposing party's written consent—which has been denied in this case—or the Court's leave. Fed. R. Civ. P. 15(a)(2). District courts are instructed to "freely give leave [to amend] when justice so requires," *id.*; *see also Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006) (explaining that Rule 15 "is to be construed liberally"), and thus the non-movant bears the burden of demonstrating that an amendment should not be permitted, *Connecticut v. U.S. Dep't of the Interior*, 363 F. Supp. 3d 45, 54 (D.D.C. 2019); *see also Gudavich v. District of Columbia*, 22 F. App'x. 17, 18 (D.C. Cir. 2001) (noting that non-movant "failed to show prejudice from the district court's action in allowing the [movant's] motion to amend"). A court may deny leave to amend for undue delay, undue prejudice to the opposing party, futility of amendment, or the movant's bad faith. *See Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 38 (D.C. Cir. 2014) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

When evaluating whether an amendment imposes undue delay or undue prejudice, courts consider "the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1487 (3d ed. 2016). Even if an amendment might impose some degree of delay and additional expense, such inconvenience does not necessarily constitute undue prejudice. *See Barkley*, 766 F.3d at 39. Instead, an amendment may be unduly prejudicial when it "substantially changes the theory on which the case has been proceeding and is proposed late

4

enough so that the opponent would be required to engage in significant new preparation"; would "put [the opponent] to added expense and the burden of a more complicated and lengthy trial"; or raises "issues . . . [that] are remote from the other issues in the case." *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) (quoting 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1487 (2d ed. 1990)). Amendments that do not "radically alter the scope and nature of the action" are therefore generally permitted. *See Gilliard v. Gruenberg*, 302 F. Supp. 3d 257, 271 (D.D.C. 2018) (citing *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 8 (D.D.C. 2013)). Amendment may also be inappropriate when the requested amendment would be futile because it would not survive a motion to dismiss, *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010), or if the moving party has acted in bad faith in light of the length of the delay between the latest pleading and the amendment sought, as well as the reasons for the movant's delay, *see Djourabchi*, 240 F.R.D. at 13.

A plaintiff seeking to add new defendants to a case must meet the general amendment standard articulated by Rule 15 as well as the requirements of Rule 20(a)(2), which permits the addition if (1) "any right to relief . . . asserted against [the parties] . . . aris[es] out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 20's "same transaction" and "common question" prongs are liberally construed to promote the "just, speedy, and inexpensive determination of the action," *Martinez v. Dep't of Justice*, 324 F.R.D 33, 36 (D.D.C. 2018) (quoting *Davidson v. District of Columbia*, 736 F. Supp. 2d 115, 119 (D.D.C. 2010)), and courts should aim to entertain "the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). In furtherance of these goals, the Rule's

"same transaction" requirement is interpreted broadly "to permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Alexander v. Edgewood Mgmt. Corp.*, 321 F.R.D. 460, 462 (D.D.C. 2017) (quoting *In re Vitamins Antitrust Litig.*, 2000 WL 1475705, at *18 (D.D.C. May 9, 2000)). Claims generally satisfy the first requirement if they are "logically related." *Spaeth v. Mich. State Univ. Coll. of Law*, 845 F. Supp. 2d 48, 53 (D.D.C. 2012) (quoting *Maverick Entm't Grp., Inc. v. Does 1–2,115*, 810 F. Supp. 2d 1, 12 (D.D.C. 2011)). The second "common question" element requires "only that there be some common question of law or fact as to all [of plaintiff's] claims." *Parks v. District of Columbia*, 275 F.R.D. 17, 18 (D.D.C. 2011) (quoting *Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 11 (D.D.C. 2004)).

### B.    Analysis

#### 1.    UMWA's Motion to Rejoin the Subsidiaries

UMWA seeks to amend its Complaint in the enforcement action to add the Subsidiaries as Defendants. *See generally* Pl.'s Mot. 3d Am. Compl. CONSOL opposes amendment on the grounds that it marks the third time UMWA has attempted to add the Subsidiaries and doing so would not be in the interest of justice. *See* Def.'s Mem. Opp'n Pl.'s Mot. 3d Am. Compl. at 3–8, ECF No. 134.

To be sure, the Southern District of West Virginia dismissed the Subsidiaries on two prior occasions. *See* Inj. Op.; Transfer Op. But both decisions were based on the court's conclusion that it could not properly exercise personal jurisdiction over the Subsidiaries. Inj. Op. at 10; Transfer Op. at 40–53. In the first decision, the court determined that the Subsidiaries lacked sufficient contacts with West Virginia to establish either general or specific jurisdiction. Inj. Op. at 10. And in the second, the court declined to exercise pendent personal jurisdiction over the

6

Subsidiaries through a newly-added ERISA claim that the court had decided to dismiss. Transfer Op. at 40–49.[1]

None of the due process concerns that led the Southern District of West Virginia to decline to exercise personal jurisdiction over the Subsidiaries is present here. After all, the Subsidiaries participated in the resolution of disputes process in Washington, D.C., and the arbitration award was rendered here. Transfer Op. at 63. Presumably for those reasons, CONSOL and the Subsidiaries previously conceded that the jurisdictional deficiencies present in West Virginia would not exist here, Defs.' Mem. Supp. Mot. Dismiss and Transfer at 20, ECF No. 112, and the Southern District of West Virginia noted that transfer to this District was in the interest of justice because this Court would have personal jurisdiction over the Subsidiaries, Transfer Op. at 63.

The fact that the Subsidiaries were previously dismissed for lack of personal jurisdiction thus fails to demonstrate that adding them as Defendants *here* would impose undue prejudice. But CONSOL also argues that adding new parties would extend the timeline in a case that has already stretched over two years. Def.'s Mem. Opp'n Pl.'s Mot. 3d Am. Compl. at 5–7. According to CONSOL, adding the Subsidiaries as Defendants would "muddy the waters" and impede the progress already made, including the pruning of UMWA's Complaint to the LMRA claim, consolidating the cases to ensure consistent judgments under Rule 42, and putting the consolidated cases on an expedited path for judicial review. *Id.* at 5–6. CONSOL highlights that the passage of time has already impaired the availability of the evidence in this case.[2]

---

[1] Judge Faber's Opinion also noted that the Subsidiaries had not consented to nor waived their objection to the court's personal jurisdiction and that personal jurisdiction over the Subsidiaries did not exist under an agency or "alter ego" theory. Transfer Op. at 50–51.

[2] For example, CONSOL states that one arbitrator "alleged to have not been impartial" in rendering the arbitration award died in 2019 before the Parties were able to preserve his testimony. Def.'s Mem. Opp'n Pl.'s Mot. 3d Am. Compl. at 8.

It is certainly the case that adding the Subsidiaries as Defendants may, as with any amendment, cause some degree of delay and additional expense. But that does not necessarily constitute undue prejudice. *See Barkley*, 766 F.3d at 39. The factors that courts typically point to when identifying undue delay or prejudice—a substantial change in the theory of the case that would require the opponent to engage in significant new preparation, put the opponent to added expense and the burden of a more complicated and lengthy trial, or raise issues that are remote from the other issues in the case—are conspicuously absent here. All of the relevant Parties are already before the Court in the consolidated cases, adding the Subsidiaries to the lead case will not affect the current Scheduling Order, ECF No. 129, and the Parties will still get to the summary judgment stage on the same timeline. The action will progress on the same theory and be grounded in the same issues regarding the enforceability of the arbitration award whether or not the Subsidiaries are added as Defendants. Furthermore, the action seeking vacatur is predicated on the same facts, so limited additional resources, if any, will be required of any Party. In fact, the Southern District of West Virginia noted that transfer to this District may "facilitate the speedy remainder of the proceedings, particularly if plaintiffs attempt to again amend their complaint in some manner to re-join the Subsidiaries." Transfer Op. at 62.

CONSOL's final argument centers around a corporate reorganization in 2018. CONSOL contends that the Subsidiaries, although once wholly-owned subsidiaries of CONSOL, are now subsidiaries of "an unrelated, publicly-traded corporate parent" and that UMWA's proposed amendment misstates the Subsidiaries' present relationship with CONSOL. Def.'s Mem. Opp'n Pl.'s Mot. 3d Am. Compl. at 8. The Court notes that any amended pleadings should lay out the present facts as best understood by each Party, and that UMWA's pleadings should reflect, to the extent that corporate restructuring by CONSOL and the Subsidiaries is relevant, the facts that serve

8

as the basis for their filings.  CONSOL fails to demonstrate, however, that such reorganization somehow renders addition of the Subsidiaries in the enforcement action improper.  CONSOL and the Subsidiaries remain free, of course, to argue that the relief UMWA seeks against the Subsidiaries is now unavailable because of the reorganization.

      **2.**      **UMWA's Motion to Add a Counterclaim in the Vacatur Action**

UMWA also seeks to add in the vacatur action a counterclaim to compel enforcement of the arbitration award.  *See generally* Def.'s Mot. Am. Answer.  UMWA argues that the counterclaim will enable the Court to grant full relief in the event that UMWA prevails in the dispute over the award's enforceability.  Def.'s Mem. Supp. Mot. Am. Answer at 5, ECF No. 132.  The Subsidiaries oppose on the grounds that the counterclaim is a compulsory counterclaim barred by Rule 13, Pls.' Mem. Opp'n Mot. Am. Answer at 2, ECF No. 135, and waived by UMWA, *id.* at 6.

When a party seeks amendment to add a counterclaim, that amendment—like other amendments—is assessed under Rule 15.  While Rule 13(a) provides that a pleading "must state as a counterclaim" any claim that, at the time of its service, the pleader has against an opposing party if the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction," Fed. R. Civ. P. 13(a)(1), a party may add an omitted counterclaim "with the opposing party's written consent or the court's leave," Fed. R. Civ. P. 15(a)(2).  Amendments to add counterclaims are evaluated under Rule 15's liberal standard and based on "the propriety of amendment on a case by case basis," *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 344 (D.C. Cir. 1997), in furtherance of Rule 13's purpose of "prevent[ing] multiplicity of actions and . . . achiev[ing] resolution in a single lawsuit of all disputes arising out of common matters," *Columbia Plaza Corp. v. Sec. Nat. Bank*, 525 F.2d 620, 625 (D.C. Cir. 1975).

The Subsidiaries incorrectly presume that Rule 13's general mandate that a pleading (such as UMWA's Answer in the vacatur action) "must" state a compulsory counterclaim bars the future addition of a counterclaim that could have been asserted in the initial pleading.  Although a defendant's failure to assert a compulsory counterclaim precludes its assertion in a later action against the plaintiff, that bar operates to prevent future *suits*, not to bar *amendments* in the initial suit.  See *Perkins v. Fort Lincoln II Condo. Ass'n*, 2009 WL 10736956 (D.D.C. July 30, 2009) (discussing amendment to add compulsory counterclaim under FRCP 13(a)(1) but making clear that adding counterclaim not barred by technicality of omission in earlier pleading).  Instead, amendments that add compulsory counterclaims are properly evaluated under Rule 15.  6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1430 (3d ed. 2016).  If anything, Rule 13's bar on UMWA's ability to assert a compulsory counterclaim in a subsequent suit makes UMWA's Motion, Def.'s Mot. Am. Answer, even more persuasive because the claim could not be asserted in the future (at least in federal court).

The Subsidiaries argue that permitting the counterclaim would go against the Federal Rules' general policy favoring expeditious resolution of litigation and federal labor law's policy of expediting judicial review of labor arbitration awards to promote labor peace and industrial relations.  Pls.' Mem. Opp'n Mot. Am. Answer at 4.  In support of this contention, the Subsidiaries identify a decision from the Western District of Pennsylvania in which the trial court rejected UMWA's suit to vacate an arbitration award when the suit was brought eleven months after the award was rendered.  *Id.* at 5 n.2 (citing *United Mine Workers of Am. v. Jones & Laughlin Steel Corp.*, 378 F. Supp. 1206 (W.D. Pa. 1974)).  Here, in contrast, the counterclaim seeks to *enforce* the award, not to vacate it; a party seeking to maintain the status quo does not threaten the goals of expeditious resolution of litigation and promotion of labor peace and industrial relations in the

way a delayed suit to *vacate* an arbitration award may threaten those objectives.  Moreover, the counterclaim will be asserted in a suit filed the same month the award was issued, and the issues of fact and law relating to the counterclaim are similar (if not identical) to the issues relevant to the Subsidiaries' claims.  And the Subsidiaries can hardly argue that they were not on notice that UMWA was attempting to enforce the award against them; after all, UMWA has repeatedly tried to join the Subsidiaries to the enforcement action.  Indeed, UMWA's repeated attempts to join the Subsidiaries in the enforcement action demonstrate that UMWA's failure to include the counterclaim in its initial Answer was not an obstructionist tactic to prevent judicial review of the counterclaim in the Western District of Pennsylvania.  *See* Pls.' Mem. Opp'n Mot. Am. Answer at 3–8.

### III.     Motion to Quash

On October 15, 2020, CONSOL and the Subsidiaries served a subpoena on the Funds, a group of six multiemployer benefit plans involved in the resolution of disputes process.  Mot. Quash at 1.  One of these benefit plans "is the master administrative entity for all the plans in the group," which referred the initial dispute between CONSOL and UMWA to the Trustees for arbitration. Mot. Quash Mem. at 1, ECF No. 138.  The subpoena at issue seeks testimony regarding policies and procedures for processing, assigning, and resolving disputes and specific events and considerations during the arbitration process that culminated in the issuance of the 2017 award.  *See generally* Mot. Quash Ex. 2, ECF No. 138-3.  On October 23, 2020, the Trustees and two components of the Funds moved to quash the subpoena because it seeks testimony protected by arbitral immunity and privilege.  *See generally* Mot. Quash.

#### A.     Legal Standard

A court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter."  Fed. R. Civ. P. 45(d)(3)(A)(iii).  Various immunities protect disclosure of

certain information and materials during discovery.  One such immunity is the doctrine of judicial immunity, which protects courts, judges, law clerks, and court staff to "assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation."  *Butz v. Economou*, 438 U.S. 478, 511–12 (1978).  Courts have extended this immunity to a wide range of persons who play a role in the adjudicative process.  *See, e.g.*, *id.* at 512–13 ("We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages."); *Wagshal v. Foster,* 28 F.3d 1249, 1254 (D.C. Cir. 1994) (extending immunity to mediators).

Most circuit courts to address the question have extended this immunity to both individual arbitrators and the arbitral forum.  *See, e.g., Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1159 (10th Cir. 2007) ("[C]ourts uniformly hold that arbitration forums and sponsors, like courts of law, are immune from liability for actions taken in connection with administering arbitration."); *Int'l Med. Grp., Inc. v. Am. Arbitration Ass'n.,* 312 F.3d 833, 844 (7th Cir. 2002) (finding arbitration forum immune from suit); *New England Cleaning Servs., Inc. v. Am. Arbitration Ass'n,* 199 F.3d 542, 545 (1st Cir. 1999) ("[O]rganizations that sponsor arbitrations, as well as arbitrators themselves, enjoy this immunity from civil liability."); *Hawkins v. Nat'l Ass'n of Sec. Dealers Inc.,* 149 F.3d 330, 332 (5th Cir. 1998) ("The [arbitral forum] enjoys arbitral immunity from civil liability for the acts of its arbitrators in the course of conducting contractually agreed-upon arbitration proceedings."), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith v. Manning,* 136 S. Ct. 1562 (2016); *Olson v. Nat'l Ass'n of Sec. Dealers,* 85 F.3d 381, 383 (8th Cir. 1996) ("Arbitral immunity protects all acts within the scope of the arbitral process," including those by "sponsoring organizations."); *Austern v. Chi. Bd.*

*Options Exch., Inc.,* 898 F.2d 882, 886 (2d Cir. 1990) (holding that "commercial sponsoring organization" is "entitled to immunity for all functions that are integrally related to the arbitral process"); *Corey v. N.Y. Stock Exch.,* 691 F.2d 1205, 1211 (6th Cir. 1982) ("Extension of arbitral immunity to encompass boards which sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity."). Arbitral immunity is grounded in "the notion that arbitrators acting within their quasi-judicial duties are the functional equivalent of judges, and, as such, should be afforded similar protection." *Young Habliston v. Finra Regulation, Inc.*, 2017 WL 396580, at *6 (D.D.C. Jan. 27, 2017) (quoting *Pfannenstiel*, 477 F.3d at 1158). While the D.C. Circuit has apparently not recognized arbitral immunity, the Court finds the foregoing decisions, and their reasoning, persuasive.

Arbitral immunity both protects arbitrators and arbitral fora from liability and gives rise to a testimonial privilege which, "subject to exception, has been recognized to protect arbitrators from being subjected to lengthy, costly, and intrusive discovery into decisional matters by way of subpoena and deposition." *United Food & Commercial Workers Int'l Union v. SIPCO, Inc.*, 1990 WL 364772, at *2 (S.D. Iowa Oct. 16, 1990). Arbitrators and arbitral fora are thus generally immune from testimony (whether at deposition or trial) unless the party seeking the testimony can demonstrate an exception to the immunity.

One such exception arises when there is evidence of bias or misconduct in the arbitration. Some courts permit testimony when there is evidence giving rise to a reasonable inference of partiality, *see, e.g.*, *Hamilton Park Health Care Ctr., Ltd. v. 1199 SEIU United Healthcare Workers E.*, 2013 WL 6050138, at *5 (D.N.J. Nov. 13, 2013) [hereinafter *Hamilton Park*]; *Admin. Dist. Council 1 of Ill. of the Int'l Union of Bricklayers & Allied Craft-Workers, AFL-CIO v. Masonry Co., Inc.*, 941 F. Supp. 2d 912, 917 (N.D. Ill. 2012) [hereinafter *Admin. Dist. Council 1*],

while other courts require "clear evidence" of impropriety or bias, *see Lyeth v. Chrysler Corp.*, 929 F.2d 891, 899 (2d Cir. 1991); *In re EquiMed, Inc.*, 2005 WL 2850373, at *2 (E.D. Pa. Oct. 28, 2005). At a minimum, however, the party seeking testimony from an arbitral entity must provide more than a conclusory allegation of partiality. The mere fact that there are circumstances suggesting the *possibility* of bias is insufficient; the party seeking discovery must demonstrate that partiality is "more than just possible or plausible by pointing to sufficient concrete evidence that would enable a reasonable person to conclude that there is a legitimate question as to the partiality of the arbitrator." *Admin. Dist. Council 1*, 941 F. Supp. 2d at 917.

## B. Analysis

CONSOL and the Subsidiaries point to the timing of certain events in the arbitration relative to proceedings in parallel civil litigation as evidence of the arbitrators' desire to "pre-empt a judicial decision that might invalidate the lower court's injunction and threshold arbitrary determination . . . [to] eradicate the vestiges of appellate review [thereby] solidifying the UMWA's preferred, informal forum." Companies' Opp'n Mot. Quash at 8, ECF No. 141. According to CONSOL and the Subsidiaries, they have demonstrated that a reasonable person could conclude that there is a legitimate question as to the partiality of the arbitrators. *Id.* at 8–9.

The Court disagrees. General allegations of suspicious timing are not, without more, the type of concrete evidence that courts find sufficient to permit discovery regarding potential bias or partiality in arbitration.

For example, in *Admin. Dist. Council 1*, one of the cases on which CONSOL and the Subsidiaries rely, the party seeking discovery alleged that the arbitrators appeared to be the defendant's business competitors. 941 F. Supp. 2d at 917–18. The court determined that this allegation and the possible appearance of impropriety were not enough to warrant discovery when there was no evidence that the arbitrators had concealed their relationships with any party or in a

way that impacted their partiality, nor that the arbitrators made their decision based on improper motives. *Id.* Similarly, in *Hamilton Park*, the district court recognized that discovery may be granted when "plainly relevant to colorable claims of arbitral bias or misconduct," 2013 WL 6050138, at *5, but ultimately found that discovery was not warranted when the plaintiff only provided evidence that an arbitrator had conducted *ex parte* meetings with the parties and received payments from the defendant as a matter of public record*, id.* at *3–4.

To be sure, arbitrator testimony was permitted in *Antietam Indus., Inc. v. Morgan Keegan & Co.*, 2012 WL 4513763, at *1–2 (M.D. Fla. Oct. 2, 2012), but there specific evidence was proffered that one of the arbitrators made misrepresentations and failed to disclose information suggesting that the arbitrator may have been biased. Arbitrator testimony was also permitted in *In re EquiMed, Inc.*, when specific, nonpublic, undisclosed dealings involving the arbitrator and one of the parties called the arbitrator's neutrality into question and were discovered only after the arbitration had completed. 2005 WL 2850373, at *1–2.

Here, CONSOL and the Subsidiaries allege an appearance of impartiality due to public scheduling decisions that were known to CONSOL during the arbitration. CONSOL had the opportunity to object to that schedule (and did so). Companies' Opp'n Mot. Quash at 7. CONSOL and the Subsidiaries do not offer evidence that the arbitrators concealed any part of the arbitration process or that the arbitrators actually made their decision based on improper motives. Based on the information and evidence proffered by CONSOL and the Subsidiaries, the Court cannot conclude that there is even a reasonable inference of partiality sufficient to permit the deposition testimony.[3]

---

[3] It is unnecessary for the Court to choose which standard to apply in this case, *see supra* pp. 13–14, because there is insufficient evidence to meet even the more lenient standard.

15

## IV. Conclusion

For the foregoing reasons, UMWA's Motion to Amend its Second Amended Complaint, ECF No. 131, UMWA's Motion to Amend its Answer in the vacatur action, ECF No. 132, and the third-party Motion to Quash, ECF No. 138, are **GRANTED**. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: December 1, 2020

CARL J. NICHOLS
United States District Judge