IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CNX RESOURCES CORPORATION (f/k/a CONSOL Energy Inc.)[1]; HELVETIA COAL CO.; ISLAND CREEK COAL CO.; LAUREL RUN MINING CO.; and CONSOL AMONATE FACILITY LLC <br><br> Defendant. <br><br> HELVETIA COAL CO., et al, <br><br>     Plaintiffs <br><br> v. <br><br> INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA, <br><br>     Defendant. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Civil No. 1:20-cv-1475 <br> Civil No. 1:20-cv-1476 |

**THIRD AMENDED COMPLAINT**

1.  This is a Civil Action to Confirm an Arbitration Decision brought by the International

Union, United Mine Workers of America ("UMWA") against CNX Resources Corporation f/k/a

---

[1] The Court's December 1, 2020 Memorandum Opinion "notes that any amended pleadings should lay out the present facts as best understood by each Party…" (ECF 145, p. 8-9). It is now the UMWA's understanding that there is no entity named "CNX Resources, Inc." but instead, the company formerly known as CONSOL Energy, Inc. is now known as "CNX Resources Corporation." This Third Amended Complaint (in contrast to the Proposed Third Amended Complaint filed by the UMWA on August 7, 2020 [ECF 131-1]) refers to the company as "CNX Resources Corporation (f/k/a Consol Energy Inc.)" throughout. Further, it is the UMWA's understanding that Helvetia Coal Company, Island Creek Coal Company, Laurel Run Mining Company, and CONSOL Amonate Facility ceased to be subsidiaries of CONSOL Energy Inc. on or about November 29, 2017, at which time they were spun off and formed a new company CONSOL Mining Corp. (CEIX). Accordingly, the Third Amended Complaint may refer to Helvetia Coal Company, Island Creek Coal Company, Laurel Run Mining Company, and CONSOL Amonate Facility as the "former" or "then" wholly owned subsidiaries of CNX/CONSOL.

CONSOL Energy Inc. ("CNX/CONSOL") for itself and as agent for its former wholly owned subsidiaries, each of which is also named individually: Helvetia Coal Company, Island Creek Coal Company, Laurel Run Mining Company, and CONSOL Amonate Facility, LLC (collectively "CNX/CONSOL Subsidiaries"). On March 17, 2017, the Southern District of West Virginia by Order of the Hon. David A. Faber preliminarily enjoined CNX/CONSOL from terminating or making any changes to Plaintiffs' group health insurance plan ("Employer Plan"), pending issuance of an arbitration decision. On October 31, 2017, that decision issued and a copy of it is attached hereto as Exhibit A.

2.      Plaintiff seeks an order confirming the final and binding arbitration decision, which was issued pursuant to a negotiated dispute resolution process entered into by the UMWA and CNX/CONSOL by itself and as agent for its former wholly owned subsidiaries for the purpose of efficient and consistent resolution of disputes arising under the Employer Plan.

## Jurisdiction and Venue

3.      The Court has subject matter jurisdiction over this cause of action under 28 U.S.C. § 1331 and Section 301 of the Labor Management Relation Act ("LMRA"), 29 U.S.C. §185. For all purposes material to this action, CNX/CONSOL acted and continues to act as agent for its former wholly owned subsidiaries.

4.      Venue with respect to CNX/CONSOL and its former wholly owned subsidiaries lies in this judicial district pursuant to 28 U.S.C. §1391(b) and 29 U.S.C. §185(a).

## Parties

5.      Plaintiff UMWA is an unincorporated association and labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. §152(5). The UMWA is party to the 2011 National Bituminous Coal Wage Agreement ("2011 NBCWA"), a collective bargaining agreement it negotiated with the Bituminous Coal Operators' Association ("BCOA"), a

multiemployer bargaining group that at the time of the negotiation of the 2011 NBCWA was controlled by CNX/CONSOL. The UMWA represents now-retired employees of CNX/CONSOL, which at times relevant to this action either directly or through its former wholly owned subsidiaries, operated mining facilities in an industry affecting commerce within the meaning of Section 301(a) of the LMRA, 29 U.S.C. §185. The UMWA is an "employee organization" within the meaning of ERISA, 29 U.S.C.A. § 1002(4).

6. Defendant CNX/CONSOL directly and as agent for its former wholly owned subsidiaries, was at times relevant to this action an employer engaged in commerce or in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(2) and 152(7). CNX/CONSOL is a "plan sponsor" of the Employer Plan within the meaning of ERISA, 29 U.S.C.A § 1002(16)(B), is an "employer" within the meaning of ERISA, 29 U.S.C.A. § 1002(5), and is a fiduciary within the meaning of ERISA, 29 U.S.C. § 1002(21)(A). CNX/CONSOL also administers the Employer Plan within the meaning of ERISA, 29 U.S.C.A § 1002(16)(A). The Employer Plan is an "employee welfare benefit plan" within the meaning of the ERISA, 29 U.S.C.A. § 1002(1).

7. Defendant Helvetia Coal Company was a subsidiary of CNX/CONSOL and was a member of the BCOA at the time the 2011 NBCWA was executed. Helvetia Coal Company's principle office is located at 1000 CONSOL Energy Drive, Canonsburg, Pennsylvania 15317, which is CNX/CONSOL corporate headquarters. Helvetia Coal Company was at all times relevant to this action an employer engaged in commerce or in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(2) and 152(7). Helvetia Coal Company is a "plan sponsor" of the Employer Plan within the meaning of ERISA, 29 U.S.C.A § 1002(16)(B), is an "employer" within the meaning of ERISA, 29 U.S.C.A. § 1002(5), and is a fiduciary within the meaning of ERISA, 29 U.S.C. § 1002(21)(A).

8.      Defendant Island Creek Coal Company was a subsidiary of CNX/CONSOL and was a member of the BCOA at the time the 2011 NBCWA was executed. Island Creek Coal Company's principle office is located at 1000 CONSOL Energy Drive, Canonsburg, Pennsylvania 15317, which is CNX/CONSOL corporate headquarters. Island Creek Coal Company was at all times relevant to this action an employer engaged in commerce or in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(2) and 152(7). Island Creek Coal Company is a "plan sponsor" of the Employer Plan within the meaning of ERISA, 29 U.S.C.A § 1002(16)(B), is an "employer" within the meaning of ERISA, 29 U.S.C.A. § 1002(5), and is a fiduciary within the meaning of ERISA, 29 U.S.C. § 1002(21)(A).

9.      Defendant Laurel Run Mining Company was a subsidiary of CNX/CONSOL and was a member of the BCOA at the time the 2011 NBCWA was executed. Laurel Run Mining Company's principle office is located at 1000 CONSOL Energy Drive, Canonsburg, Pennsylvania 15317, which is CNX/CONSOL corporate headquarters. Laurel Run Mining Company was at all times relevant to this action an employer engaged in commerce or in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(2) and 152(7). Laurel Run Mining Company is a "plan sponsor" of the Employer Plan within the meaning of ERISA, 29 U.S.C.A § 1002(16)(B), is an "employer" within the meaning of ERISA, 29 U.S.C.A. § 1002(5), and is a fiduciary within the meaning of ERISA, 29 U.S.C. § 1002(21)(A).

10.     Defendant CONSOL Amonate Facility LLC was a subsidiary of CNX/CONSOL and was a member of the BCOA at the time the 2011 NBCWA was executed. CONSOL Amonate Facility LLC's principle office is located at 1000 CONSOL Energy Drive, Canonsburg, Pennsylvania 15317, which is CNX/CONSOL corporate headquarters. CONSOL Amonate Facility LLC was at all times relevant to this action an employer engaged in commerce or in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(2) and 152(7). CONSOL

4

Amonate Facility LLC is a "plan sponsor" of the Employer Plan within the meaning of ERISA, 29 U.S.C.A § 1002(16)(B), is an "employer" within the meaning of ERISA, 29 U.S.C.A. § 1002(5), and is a fiduciary within the meaning of ERISA, 29 U.S.C. § 1002(21)(A).

## The Parties' Agreement to Arbitrate

11. The 2011 NBCWA governed the terms and conditions of employment of UMWA-represented miners employed by CNX/CONSOL (formerly known as Consol Energy Inc, or "Consol") directly or through its then wholly owned subsidiaries at numerous mines located in multiple states, including West Virginia, Virginia and Pennsylvania. Each employer signatory to the 2011 NBCWA is required to establish an Employer Plan, which is incorporated into the 2011 NBCWA. In its Employer Plan, CONSOL promised health benefits to its UMWA-represented miners "for life."

12. In order to ensure uniformity among the health plans established pursuant to the 2011 NBCWA and predecessor agreements, the UMWA and the BCOA established the "Resolution of Disputes" or "ROD" procedure. Under the ROD procedure, disputes arising under the separate benefit plans maintained by each individual employer, including CONSOL, are subject to resolution by the four Trustees of the UMWA 1993 Benefit Plan (the "Trustees"), two of whom are appointed by the UMWA and two by the BCOA. The 2011 NBCWA provides that the "decision[s] of the Trustees shall be final and binding on the parties." 2011 NBCWA Article XX, Section (e)(5). Ex A at 4.

13. The Trustees are also charged with developing procedures to resolve disputes arising under the contractual benefit plans. The procedure is invoked by the filing of a request on a standard resolution of disputes form. Staff of the UMWA Health and Retirement Funds ("Funds"), who serve at the direction of the Trustees, notify the interested parties of the dispute and request written submissions. The issues are researched by Funds staff, consulting the

submissions, the plans, and prior precedential ROD decisions. A draft decision is prepared and submitted to the Trustees for consideration.

14. If the Trustees are able to resolve the dispute, they issue a final and binding decision. If the Trustees are unable to resolve the dispute, it is referred to an independent arbitrator selected by mutual agreement. The decision, whether entered by the Trustees or the arbitrator, is final and binding.

15. Courts have held that a Resolution of Dispute addressing the lifetime retiree health benefits provided through the NBCWA concerns "vested benefits, the right to which extends beyond the termination of the contract" and such RODS are fully enforceable. Parsons v. Power Mountain Coal Company, No. 2:07-00719, 2009 WL 899457, at *6 (S.D.WV March 31, 2009). In Parsons, the Court held that "[e]nforcement of the ROD decisions in this case comports not only with the stated goal in the 1998 NBCWA [a predecessor to the 2011 NBCWA] that the Employer Plans be administered consistently, but also with the sound policy that has embraced arbitration as a peaceful and efficient resolution to labor-management disputes." See id. at *12. The Fourth Circuit affirmed, commenting that "[l]est we risk the disruption of the carefully negotiated rules governing labor-management relations within the coal industry, we decline to second-guess the judgment of arbitrators interpreting a complicated collective bargaining scheme comprised of interwoven agreements." 604 F.3d 177, 178 (4th Cir. 2010).

## **CNX/CONSOL's Conduct Giving Rise to the Instant Dispute**

16. A number of CNX/CONSOL subsidiaries – including but not limited to the subsidiaries that formerly employed the now-retired miners represented by the UMWA -- were members of the BCOA and signatory to the 1974, 1978, 1981, 1984, 1988, 1993, 1998, 2002, 2006, 2007, and the 2011 NBCWAs.

17.     During negotiations between the BCOA and the UMWA that culminated in the 2011 NBCWA, CNX/CONSOL Chief Executive Officer Nicholas J. Deluliis led the BCOA Negotiating Committee. He personally signed for the BCOA in portions of the 2011 NBCWA.

18.     CNX/CONSOL agreed to provide post-retirement healthcare benefits for certain former employees of its current and former subsidiaries whose benefits are provided in accordance with the Employer Plan established pursuant to the 2011 NBCWA.

19.     At a meeting between representatives of the UMWA and CNX/CONSOL held on February 11, 2016, CONSOL requested the UMWA 'consent' to a broad outline of a plan to terminate its existing Employer Plan and replace it with two new plans: a plan for pre-65 retirees that shifts costs from the company to the retirees; and a scheme for providing limited cash payments into accounts for post-65 retirees to purchase individual plans.

20.     On or about March 15, 2016, CNX/CONSOL transmitted to the retired miner participants in its Employer Plan a letter stating that "[o]n February 11, 2016 we initiated discussions with the UMWA regarding new options for providing healthcare benefits" and promised that "[i]n all events, we will continue to communicate with you in the coming months about this very important matter before any changes are implemented." ECF Doc. No. 8-14. A similar letter was sent to participants on May 6, 2016. ECF Doc. No. 8-16. Both letters encouraged participants to contact the UMWA, and UMWA staff subsequently fielded a great number of telephone calls from anxious retirees concerned about their health benefits.

21.     On or about May 3, 2016, CNX/CONSOL transmitted to the UMWA a summary of the cash payment scheme it intended to implement following termination of the group insurance provided through the Employer Plan. ECF Doc. No. 8-15.

22.     The UMWA sent a letter dated May 10, 2016 to CNX/CONSOL reiterating its offer to "assist you in exploring means of achieving savings while still fulfilling Consol's legal

7

obligation to maintain benefits at their current levels." ECF Doc. No. 8-17. The letter specifically offered to "discuss options for adopting and improving managed care and other forms of cost containment," which are cost savings mechanisms subject to specific requirements and procedures included in the 2011 NBCWA Employer Plan at Article IV, including a requirement that any such mechanism "will not result in a reduction of benefits or additional costs for covered services provided under the Plan." Consistent with this requirement, the UMWA closed its letter by stating that "[i]n view of Consol's vested statutory and contractual obligations to continue providing benefits at their current levels, the UMWA is not willing to agree to cost shifting or other forms of benefit reductions."

23.     On or about May 26, 2016, CNX/CONSOL transmitted a response to the UMWA's May 3, 2016 letter in which it asserted that "benefits and benefit levels provided by CONSOL's signatory companies are established for the term of the Agreement only" and expressed "hope we can begin serious negotiations soon." ECF Doc. No. 8-18. In a follow-up letter dated July 25, 2016, CNX/CONSOL expressed that its "objective is to make benefit plan changes effective as soon as our current CBA expires on December 31, 2016" and indicated that this would "require that we enter into certain provider agreements and begin communicating with our Medicare-eligible retirees in early September, 2016." ECF Doc. No. 8-19.

24.     Representatives of CNX/CONSOL and the UMWA met again on August 16, 2016. CONSOL reiterated its intention to terminate and replace its Employer Plan. The UMWA reiterated its unwillingness to impose increased costs on its retired miners but again offered to discuss the managed care and cost containment options available under Article IV of the Employer Plan.

25.     On or about October 31, 2016, CNX/CONSOL transmitted to the UMWA an official notice pursuant to Section 8(d) of the NLRA that all of its then-subsidiaries signatory to the

NBCWA "have permanently terminated their mining operations" and that the subsidiaries would terminate the 2011 NBCWA effective as of its expiration date, December 31, 2016. ECF Doc. No. 8-20. The notice stated that CONSOL was prepared to "discuss the non-healthcare effects of this Notice of contract termination on your members" and invited the UMWA to respond "whether you prefer that matters relating to this Notice of contract termination be included as part of our ongoing retiree healthcare negotiations, or whether you prefer to designate different Union representatives for negotiations about non-healthcare matters." *Id.*

26.     On November 1, 2016, the UMWA filed a ROD with the Trustees on behalf of a retired miner. The ROD noted the dispute as to whether CONSOL may "implement any unilateral changes or modifications of the benefits provided by its plan, either during the term of the 2011 NBCWA or following its termination" and asked for an order that CONSOL "notify its retirees that it cannot make any changes in their benefits without the agreement of the UMWA." A true and correct copy of the November 1, 2016 ROD is attached hereto as Exhibit B.

27.     On or about November 7, 2016, CNX/CONSOL transmitted to the UMWA a letter asking for additional dates for "negotiations" with respect to retiree healthcare. ECF Doc. No. 8-22. The UMWA responded by letter dated November 18, 2016 acknowledging receipt of the termination notice and stating,

> We have nothing to negotiate with respect to the termination of these operations and Agreements or the effects of the same. Relatedly, there is nothing to negotiate with respect to CONSOL and its subsidiaries' continuing obligation to provide retiree healthcare for life to its UMWA-represented retirees, survivors and dependents.

ECF Doc. No. 8-23. The UMWA's letter reiterated its unwillingness to increase benefit costs for retirees, concluding, "[t]o be perfectly clear, we are not open to renegotiating your retiree healthcare commitments beyond the managed care and cost containment discussions contemplated in Article IV." *Id.*  CNX/CONSOL responded to the UMWA by letter dated

November 21, 2016 stating that it "[did] not concur with [the UMWA's] declaration that the Union is not open to renegotiating retiree health commitments beyond managed care and cost containment" but claiming "[w]e do not believe the parties need to quibble about this, however, because [CONSOL's] proposals focus on managed care and cost containment." ECF Doc. No. 8-24.

28. At no point did CONSOL make proposals to the UMWA to implement the managed care or cost containment mechanisms specified in Article IV of the Employer Plan.

29. As of November 18, 2016 – the date on which the UMWA declined CNX/CONSOL's offer to bargain over the impact of CONSOL's decision to permanently terminate its UMWA-represented mining operations – there were and remain no mandatory subjects over which CNX/CONSOL and the UMWA are required by law to bargain.

30. On November 29, 2016, representatives of CNX/CONSOL and the UMWA met once more.  CNX/CONSOL once again declined the UMWA's offer to discuss managed care and cost containment savings available under the Article IV of the Employer Plan, reiterating its intention to terminate the Employer Plan and replace it with a different plan for retirees under age 65 and a scheme whereby Medicare eligible retirees over age 65 would receive cash payments into Health Reimbursement Accounts ("HRAs") to purchase individual insurance plans. Representatives of CNX/CONSOL confirmed that certain beneficiaries, including many spouses and dependents of retired miners, would lose coverage altogether. The UMWA repeated its longstanding objections to CNX/CONSOL's stated intention to breach the NBCWA and mischaracterization of the meeting as a negotiation.

31. CNX/CONSOL transmitted a letter to the UMWA dated December 8, 2016, to which it attached a summary of the scheme by which it intended to offer limited cash contributions to HRAs following its termination of UMWA retirees' group insurance provided through an

Employer Plan. ECF Doc. No. 8-25. In follow-up electronic mail correspondence between counsel, CNX/CONSOL informed the UMWA that additional communications would soon be sent to retirees. ECF Doc. No. 8-27.

32.   On December 22, 2016, the UMWA transmitted a letter to CNX/CONSOL reiterating its unwavering position that CNX/CONSOL lacked the legal authority to terminate and replace its Employer Plan and asking CNX/CONSOL to refrain from transmitting further communications to retirees about such actions pending resolution of the ROD addressing the dispute over whether CONSOL has such authority. ECF Doc. No. 8-28.

33.   On or about January 3, 2017 CNX/CONSOL (and its then-subsidiaries) transmitted to the retired miner participants in its Employer Plan two letters announcing termination and replacement of the Employer Plan. ECF Doc. No. 8-30 (first letter), 8-31 (second letter).  The first letter, transmitted on CONSOL Energy, Inc. letterhead states that "CONSOL Energy refers to the subsidiaries of CONSOL Energy Inc. that were signatory parties to one or more National Bituminous Coal Wage Agreements." ECF Doc. No. 8-30 at 1, n1.  The first letter informed beneficiaries that a third-party private health exchange would begin making appointments with Medicare eligible beneficiaries for enrollment in the plans beginning in late January.  ECF Doc. No. 8-30.  It further stated group coverage through CONSOL Energy will end on March 31, 2017 for Medicare-eligible retirees who are 65 and older and encouraged enrollment no later than March 15, 2017. *Id*.  The second letter misleadingly suggested the changes to the Employer Plan were the product of discussions with the UMWA that "are ongoing." ECF Doc. No. 8-31.

34.   In the second correspondence on CONSOL Energy, Inc. letterhead transmitted to Employer Plan beneficiaries on January 3, 2017, CNX/CONSOL (and its then-subsidiaries) wrote, "CONSOL Energy's subsidiaries that were historically signatory parties to the National Bituminous Coal Wage Agreement (collectively, those subsidiaries are referred to as "CONSOL

11

Energy") want to advise you of changes in the manner in which your retiree health care benefits are delivered to you." ECF Doc. No. 8-31.  CNX/CONSOL (and its then-subsidiaries) wrote that the letter is a "Summary of Material Modifications ("SMM")… provided to you in accordance with Department of Labor Regulations [and] summarizes in general terms certain changes that CONSOL Energy is making to retiree health care benefits provided to certain Medicare-eligible retirees such as replacing existing coverage with an HRA." *Id.* In the final paragraph of the letter, the parent CNX/CONSOL and its then-subsidiaries again repudiated the obligation to provide lifetime retiree healthcare under even its unilaterally imposed scheme, stating that it "may change or end the plan, including the HRA, and any other benefit program at any time" and that "CONSOL Energy reserves the right to amend or terminate any part or all of the plan including the HRA, any other benefit program for any reason at any time." *Id.* The final sentence stated "CONSOL Energy makes no representation or warranty regarding the adequacy of your HRA to cover all of your health care expenses now or in the future." *Id*.

35. An additional letter from CNX/CONSOL (and its then-subsidiaries) to Employer Plan beneficiaries dated January 12, 2017 contained the same language threatening termination, purporting to permit it to "amend or terminate any part or the entire plan,  any other benefit program, for any reason at any time." ECF Doc. No. 8-32. That letter also purported to terminate the ROD process by announcing a requirement that any claim for benefits must be brought in the federal District Court for the Western District of Pennsylvania.

### The Court's Preliminary Injunction Against CNX/CONSOL

36. On December 23, 2016, Plaintiff commenced the instant action in the Southern District of West Virginia with the filing of a Complaint for Injunctive Relief, ECF Doc. No. 1, which sought an order enjoining CNX/CONSOL from terminating its Employer Plan pending

12

resolution of the November 1, 2016 ROD dispute. On January 18, 2017, Plaintiff filed a Motion for a Preliminary Injunction. ECF Doc. No. 8.

37. On February 1, 2017, the Court conducted a hearing on Plaintiff's Motion for a Preliminary Injunction at which Plaintiff and CNX/CONSOL examined witnesses and presented evidence and argument.[2] At the hearing, the chief witness for CNX/CONSOL admitted that there are no persons at any of the then wholly-owned subsidiaries who have any decision-making role or authority with respect to the management and administration of the Employer Plan. ECF Doc. No. 38, Tr. 126-127.

38. On March 17, 2017, the Court found the November 1, 2016 ROD dispute arbitrable and entered an order granting Plaintiffs' Motion for Preliminary Injunction. The order enjoined CNX/CONSOL  (1) From terminating, changing or replacing the 2011 NBCWA Employer Plan, which is presently providing health coverage to retired miners, pending the results of the arbitration now underway and further order of this court; and (2) From communicating further in any way with participants and beneficiaries of the Employer Plan informing them of termination, replacement or changes to the Employer Plan." ECF Doc. No. 51. On the same day, the Court dismissed from this case the then wholly owned subsidiaries of CNX/CONSOL for want of personal jurisdiction. ECF Doc. No. 50.

### The Trustees' Processing of the November 1, 2016 ROD

39. CNX/CONSOL responded to the November 1, 2016 ROD with numerous submissions to the Trustees, the first on December 27, 2017. Additional responses were filed on March 6, March 17 and April 21, 2017. In total, CNX/CONSOL submitted to the Trustees 27 pages of argument in opposition to the ROD, accompanied by 425 pages of exhibits.

---

[2] The date set forth for the hearing on the Plaintiff's Motion for Preliminary Injunction in the Second Amended Complaint (ECF 78) and the Proposed Third Amended Complaint (ECF 131-1) was incorrect.  The correct date is February 1, 2017.

40. The Trustees processed the ROD in accordance with the procedures for resolution of disputes they promulgated pursuant to authority granted by the 2011 NBCWA and the Employer Plan. The Trustees framed the issues in dispute before them as follows: (1) "Whether the Respondent [CONSOL] can make unilateral changes to its EBP [Employer Plan] after the expiration of the NBCWA?" And, (2) "Whether the Respondent's proposal constitutes a change in the benefits or level of benefits provided in the EBP?" Ex. A at 3.

41. On October 31, 2017, the Trustees issued a final and binding written decision. The written decision thoroughly discusses each of the arguments CONSOL presented to them, prior ROD decisions relied upon as precedent and the language of the 2011 NBCWA and the Employer Plan. The written decision also indicates that the Trustees reviewed the entire transcript of this Court's February 1, 2017 hearing on Plaintiffs' Motion for Preliminary Injunction. The Trustees concluded in their written decision that: (1) "In accordance with the 2011 NBCWA and the model EBP [Employer Plan], any modification or changes in the EBP after the expiration of the 2011 NBCWA must be made only upon joint agreement of the Respondent [CONSOL] and the UMWA" and, (2) "The proposed changes that the Respondent [CONSOL] has described in its submissions will not provide the level of health benefits as mandated in the 2011 NBCWA or the model EBP [Employer Plan]." Ex. A at 9.

## COUNT I
## For An Order Confirming an Arbitration Award Under Section 301 of the LMRA

42. In the 2011 NBCWA and the Employer Plan, CNX/CONSOL (the parent corporation and its then-subsidiaries) agreed to an arbitration process and authorized the Trustees to issue a final and binding decision resolving the disputes at issue in the November 1, 2016 ROD.

43.     The Trustees processed the November 1, 2016 ROD in accordance with their procedures for resolution of dispute promulgated in accordance with the procedures established in the 2011 NBCWA and the Employer Plan.

44.     CNX/CONSOL submitted to the Trustees and the Trustees considered hundreds of pages of argument and evidence with respect to the disputed issues raised in the November 1, 2016 ROD.

45.     On October 31, 2017, the Trustees issued a decision resolving the disputes at issue in the November 1, 2016 ROD.

46.     The Trustees' written, final and binding decision of October 31, 2017 constitutes a final and binding arbitration award which draws its essence from the 2011 NBCWA and Employer Plan and should therefore be confirmed and enforced.

## Prayer for Relief

47.     WHEREFORE, Plaintiff respectfully requests that this Court:

   a.  Enter an order confirming the Trustees' October 31, 2017 final and binding decision resolving the November 1, 2016 ROD as valid and enforceable against Defendants CNX/CONSOL its former wholly owned subsidiaries Helvetia Coal Company, Island Creek Coal Company, Laurel Run Mining Company and CONSOL Amonate Facility, LLC.

   b.  Enter an order declaring that Defendants may not change the benefits provided through the Employer Plan without agreement from the UMWA; and,

   c.  Award any other relief the Court deems just and proper.

Respectfully Submitted,

/s/ Kevin F. Fagan
Kevin F. Fagan, Esq. (WV Bar No. 5216)
Visiting Attorney Admitted *Pro Hac Vice*
General Counsel
United Mine Workers of America
18354 Quantico Gateway Drive, #200
Triangle, VA  22172
Tel: 703-291-2425
Fax: 703-291-2448
kfagan@umwa.org

/s/ Deborah Stern
Deborah Stern, Esq. (DC Bar No. 362764)
United Mine Workers of America
18354 Quantico Gateway Drive, #200
Triangle, Virginia 22172
Telephone: 703.291.2429
Facsimile:  703.291.2448
Email:  dstern@umwa.org

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December 2020, a true and correct copy of this **THIRD AMENDED COMPLAINT** was served via the ECF case filing system and soon thereafter by electronic mail on the following counsel of record in this action:

>John R. Woodrum, Esq.
>Gregory Mott, Esq
>OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
>1909 K Street, N.W., Suite 1000
>Washington, DC  20006
>Telephone:  202.887.0855
>Facsimile: 202.887.0866
>john.woodrum@ogletreedeakins.com
>greg.mott@ogletreedeakins.com

>/s/ Kevin F. Fagan
>Kevin F. Fagan, Esq. (WV State Bar No. 5216)
>Visiting Attorney Admitted *Pro Hac Vice*
>General Counsel
>United Mine Workers of America
>18354 Quantico Gateway Drive, Suite 200
>Triangle, VA  22172
>Tel: 703-291-2425
>Fax: 703-291-2448
>kfagan@umwa.org

>/s/ Deborah Stern
>Deborah Stern, Esq. (DC Bar No. 362764)
>United Mine Workers of America
>18354 Quantico Gateway Drive, Suite 200
>Triangle, Virginia 22172
>Telephone: 703.291.2429
>Fax:  703.291.2448
>dstern@umwa.org