**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

INTERNATIONAL UNION, UNITED
MINE WORKERS OF AMERICA, *et al.*,

        *Plaintiffs*,

    v.                           Civil Action No. 1:20-cv-01475 (CJN)

CONSOL ENERGY INC., *et al.*,

        *Defendants*.

---

**MEMORANDUM OPINION**

In September 2021, the Court denied CONSOL and its subsidiaries' cross-motion to vacate

an arbitration award. *See* Order, ECF No. 165; *see also* Defs.'s Cross-Mot. for Summ. J., ECF

No. 155. That award determined that neither the former coal company nor any of its subsidiaries

could make certain unilateral changes to retirees' health plans. *See generally* Memorandum

Opinion ("Mem. Op."), ECF No. 164. Any change, the award concluded, must instead stem from

a joint agreement between the subsidiaries and the plan participants' Union. *See id.*

The Union representing the retirees not only opposed vacatur of the arbitration award, but

it also moved for summary judgment, seeking confirmation of the arbitration award. *See* Pls.'s

Mot. for Summ. J., ECF No. 153. The summary-judgment briefs, however, did not discuss whether

the Union or any plan participants possessed Article III standing to seek confirmation. The Court

therefore ordered supplemental briefing on two questions: first, whether the Union or any of the

plan participants have Article III standing to seek confirmation of the arbitration award, *see* Mem.

Op. at 16; and second, whether the Union or any of the plan participants would have standing to

seek confirmation in the event the subsidiaries take steps inconsistent with the award? *Id.* at 17.

In light of the supplemental briefing, the Court concludes that Plaintiffs lack Article III standing to seek confirmation of the arbitration award.

## I.    Factual & Procedural Background

International Union, United Mine Workers of America (the Union for short) and a multiemployer bargaining association called the Bituminous Coal Operators' Association, which acts on behalf of member employers, agreed on a collective bargaining agreement in the summer of 2011.  *See* Defs.'s Answer, ECF No. 151 ¶ 10.  The coal industry, including CONSOL, came under severe financial pressure soon after the bargaining agreement took effect.  As a result of the dire economic situation, CONSOL initiated a comprehensive-cost-reduction initiative.  *See* Defs.'s Statement of Undisputed Material Facts ("Defs.'s SUMF"), ECF No. 155-1 ¶ 25.

In 2016, CONSOL, speaking on behalf of signatory subsidiaries (including the signatories that are parties in this case), met with Union officials to discuss potential changes to the health benefit plans.  *Id.* ¶ 28.  CONSOL and the subsidiaries proposed "transitioning the approximately 2,000 Medicare-eligible retirees and dependents to individualized Medicare Supplement plans whose premiums would be paid from Health Reimbursement Accounts."  *Id.* ¶ 29.

Later that year, CONSOL sent a letter to Union retirees referencing the initiation of benefit discussions with the Union.  *Id.* ¶ 32.  The letter stated that CONSOL and the subsidiaries had "initiated discussions with the [Union] regarding new options for providing healthcare benefits," and promised that "[i]n all events, we will continue to communicate with you in the coming months about this very important matter before any changes are implemented."  Compl., ECF No. 1-2 at 2.  In a follow-up letter sent a couple months later, CONSOL stated that "changes to the healthcare programs provided by CONSOL's subsidiaries under the [agreement]" were under consideration given the dire economic circumstances the coal industry found itself in.  Compl., ECF No. 1-3 at

1.  The letter added that CONSOL and the subsidiaries had "recently provided a proposal to [Union] leadership that details such a plan, and we look forward to discussing these options with them so that we can continue to provide access to quality healthcare despite the harsh realities that confront our industry."  *Id.* at 2.

Soon after receiving the second letter, Richard Fink, a retired coal miner and a participant in the subsidiaries' health plan, submitted to the arbitration panel, with the aid of the Union, Resolution of Disputes No. 11-0143.  *See* Defs.'s SUMF ¶¶ 42, 44.  Fink's ROD stated: "CONSOL sent a letter to its [] retirees reflecting its intention to modify their benefits upon the termination of the 2011" bargaining agreement.  *See* Fink's ROD, ECF No. 147-2 at 2.  The letter also noted that the bargaining agreement provided that post-termination modifications of benefits "may only be implemented by agreement with the" Union.  *Id.*  And it requested an order from the arbitration panel forcing CONSOL to "notify its retirees that it cannot make any changes in their benefits without the agreement of the [Union]."  *Id.*

The arbitration panel issued its decision roughly a year later.  *See* Op. for ROD No. 11-0143, ECF No. 147-1 at 2.  The panel first concluded that it possessed jurisdiction over the ROD because "it involves a dispute arising under the [bargaining agreement] and a dispute that concerns provisions of the [agreement] that apply after [its] expiration."  *Id.* at 7.  It next decided that neither CONSOL nor the subsidiaries could "make [] changes unilaterally" to the retirees' health plans.  *Id.* at 9.  Instead, "any modification or changes [] must be made only upon joint agreement."  *Id.* at 11.  The panel acknowledged that no employer had made changes to any plan.  *Id.*  Yet it concluded that the proposed changes described in the letter would "not provide the level of health benefits as mandated in the 2011 [agreement]."  *Id.*  Soon after the panel released its decision,

CONSOL spun-off its coal business, cutting ties with many of its subsidiaries, to form a new publicly traded company, CNX. *See* Defs.'s SUMF ¶ 57.

Once the arbitration award was issued, the subsidiaries sought vacatur, contending that the arbitration panel exceeded its authority under the plain language of the bargaining agreement. *See* Defs.'s Cross Mot. for Summ. J., ECF No. 155; Pls.'s Mem. in Opp'n to Defs.'s Cross-Mot. for Summ. J., ECF No. 158; Defs.'s Answer at 20. For its part, the Union sought to confirm the arbitration award against CNX and the subsidiaries. *See* Pls.'s Mot. for Summ. J., ECF No. 153. And Defendant CNX moved to dismiss for lack of jurisdiction, arguing that the Union had failed to plead a cognizable, actual controversy against it. *See* Defs.'s Mot. to Dismiss, ECF No. 154.

As detailed in its Memorandum Opinion, the Court concluded that it lacked jurisdiction over CNX "because there is no live case or controversy between the Union (or Fink) and CNX." *See* Mem. Op. at 14. The Court also concluded that vacatur of the award against the subsidiaries was not warranted both because the arbitrators possessed the authority to issue it and because the arbitrators' decision drew its essence from the collective bargaining agreement. *Id.* at 13. The Court, however, did not confirm the arbitration award at that juncture because, as noted above, the summary-judgment briefing had not addressed whether the retirees' Union or any plan participants possessed Article III standing to seek confirmation. The Court therefore ordered supplemental briefing on whether the Union or any of the plan participants have Article III standing to seek confirmation of the arbitration award, and whether the Union or any of the plan participants would have standing to seek confirmation in the event the subsidiaries take steps inconsistent with the award, *id.* at 17.

## II.   The Court Lacks Article III Jurisdiction to Confirm the Arbitration Award

Article III of the United States Constitution provides that the "judicial Power shall extend to all Cases . . . between Citizens of different States." U.S. Const. art. III, § 2. To establish Article III standing, a "plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1646 (2022). The "injury in fact" requirement further divides into several subtests: "a plaintiff's injury must be (1) concrete, not abstract, (2) particularized, not generalized, and (3) actual or imminent, not conjectural or hypothetical." *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1115 (11th Cir. 2021) (quotation omitted) (Newsom, J., concurring). All components of the standing requirement apply "from cradle to grave, demanding that a live issue exist at every stage of litigation." *Midwest Inst. of Health, PLLC v. Whitmer*, No. 20-1611, 2022 WL 304954, at *2 (6th Cir. Feb. 2, 2022) (quotation omitted).

The Court cannot confirm the arbitration award, at present, because no live case or controversy exists between the Union and the subsidiaries. The arbitration panel did not find that the subsidiaries *had violated* the labor contract when it sent letters to retirees reflecting an intention to modify their benefits. *See* Fink's ROD, ECF No. 147-2 at 11. To the contrary, the panel concluded that the subsidiaries *would violate* the collective bargaining argument *if* the subsidiaries changed without the Union's consent the health plans of plan participants. The arbitrators therefore addressed a hypothetical forward-looking scenario rather than a concrete and imminent contract violation. As the subsidiaries put the point: "The 2017 ROD Opinion is an anomalous outlier, an arbitral advisory opinion detached from any Article III cognizable injury-in-fact." Defs.'s Opp'n to Pl.'s Br. ("Defs.'s Opp'n"), ECF No. 168 at 13.

5

The Union also does not contend that the subsidiaries have violated the arbitration award since it came down in 2017.  In fact, the Union concedes that it does not assert "a pre-Award contract violation or a post-Award violation of the award itself."  *See* Pl.'s Reply in Support of Confirmation, ECF No. 169 at 6.  The Union also seems to admit that the subsidiaries have complied up to this point with the terms of the forward-looking arbitration award.  *See* Pl.'s Br. in Support of Confirmation, ECF No. 167 at 11.  The Union thus seeks, in essence, a judgment that would address possible unlawful future activity that could cause some future unidentified harm. The Court does not have Article III jurisdiction to grant such relief.

The Court draws support from *Chicago Regional Council of Carpenters v. Onsite Woodwork Corp.*, No. 11 C 8365, 2012 WL 6189635 (N.D. Ill. Dec. 12, 2012).  In that case, Chicago Regional filed a lawsuit seeking confirmation of an arbitration award issued against Onsite. *Id.* at *1.  The arbitration award stated, among other things, that "any grievant recalled from a layoff after six months and removed from the bargaining unit must be reinstated and dues and initiation fee, if any, restored to them." *Id.* at *3.  At the time the arbitrators rendered their award, however, no grievant at that point had been removed, meaning that "the arbitrator merely held that Onsite would violate the CBA by . . . removing a Union member from the collective bargaining unit." *Id.* at *4.  Onsite contended that the district court lacked Article III jurisdiction to confirm the award because "it has not failed to comply with the award" as "none of the Grievants were improperly removed from the bargaining unit." *Id.* at *3.  The court agreed, concluding that because Onsite remained in compliance with the award, "it would be improper for the Court to confirm the arbitration award at this time." *Id.* at *4 ("The award should not be confirmed where

there is no live and actual dispute between the parties.").[1]  Rather, in that court's view, the better

course was "to heed the prudential values set forth in Article III and avoid rendering a judgment

that may merely serve to skew the relative bargaining power of the parties." *Id.* at \*5.  That court

noted for good measure too that if a "dispute arises in the future as to whether Onsite . . . removed

Union members from the collective bargaining unit, the Union may seek confirmation at that

time." *Id.*

The Court acknowledges that courts have split on the question whether "a motion to

confirm an arbitration award requires an active dispute over compliance." *Sheet Metal Workers*

*Int'l Ass'n Loc. 66 v. Northshore Exteriors Inc.*, No. C19-1261JLR, 2020 WL 7641238 at \*5 (W.D.

Wash. Dec. 23, 2020) (noting that the Third and Second Circuits split from the First Circuit);[2]

*Goins v. TitleMax of Virginia, Inc.*, No. 1:19CV489, 2021 WL 3856150 at \*1 (M.D.N.C. Aug. 27,

2021) (quotation omitted) ("Courts are divided on whether a federal court may confirm an

---

[1] To support its conclusion, the court relied on *Derwin v. Gen. Dynamics Corp.*, 719 F.2d 484 (1st Cir. 1983).  There, the Court of the Appeals declined to confirm an arbitration award where the union did not allege that the employer had violated the award.  *See id.*  As the Court of Appeals' saw things, it was "simply being asked to put its imprimatur upon an arbitral award in a vacuum." *Id.* at 491.  It declined to do so because "Article III's prudential values and concerns of judicial economy strongly counsel against the entry of a confirmatory order."  *Id.* at 492.  Plus, given the circumstances, "[e]ntry of a declaration 'confirming' the award may be taken to imply that the defendant is in fact violating it."  *Id.* at 491; *see also Loc. 2414 of United Mine Workers of Am. v. Consolidation Coal Co.*, 682 F. Supp. 399, 400 (S.D. Ill. 1988) ("Given the posture of this case regarding the absence of any dispute (except whether the awards are entitled to confirmation), the Court finds confirmation would only add to the complications of litigation.").

[2] The Fourth Circuit has declined to reach the question.  *See Brown & Pipkins, LLC v. Serv. Emps. Int'l Union*, 846 F.3d 716, 729 n.2 (4th Cir. 2017) ("We do not reach the question of whether a federal court may confirm a labor arbitration award where there is no live controversy between the parties regarding the award necessitating judicial enforcement.").

arbitration award where there is no 'live controversy between the parties regarding the award necessitating judicial enforcement."'); *U.S. Airline Pilots Ass'n v. U.S. Airways, Inc.*, No. 2:13-CV-0627, 2013 WL 5466838, at *7 (W.D. Pa. Sept. 30, 2013) ("Similarly, various federal courts have also held . . . that confirmation of an arbitration award in the absence of a concrete dispute between the parties regarding enforcement or validity would violate the requirements of Article III."). After careful review, the Court disagrees with those courts that have concluded "that confirmation is a summary proceeding designed as the final step in arbitration proceedings." *Goins*, 2021 WL 3856150 at *1 (quotation omitted) (collecting cases). The Court instead agrees with those courts have concluded that Article III "militates against ministerial confirmation of awards in the absence of a concrete dispute." *Id.* (quotation omitted); *see also 1199 SEIU United Healthcare Workers E. v. Civista Medical Ctr., Inc.*, No. DKC 10–0479, 2011 WL 310486 at *2 (D. Md. Jan 28, 2011) (holding that there was no case or controversy under Article III because neither party had alleged non-compliance with the arbitration award); *Steris Corp. v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am.*, 489 F.Supp.2d 501, 515 (W.D. Pa. 2007) (holding that a motion to confirm an arbitration award did not present a justiciable case or controversy because, "[i]n the absence of allegations that Defendants have refused to comply with the award, Plaintiff cannot show that it has suffered injury"); *IFF Chem. Holdings, Inc. v. United Steel, Paper & Forestry, Ruber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, No. 3:10-CV-738-J-99TJC, 2011 WL 2448914 at *3 (M.D. Fla. Apr. 25, 2011); *JNESO, Dist. Council 1, IUOE, AFL-CIO v. Virtua Health, Inc.*, No. CV 19-09236 (RBK/JS), 2019 WL 5388158 at *5 (D.N.J. Oct. 22, 2019).

A couple final yet important notes. The subsidiaries recognize that if they "were to make changes to their benefit plan that had an adverse impact on Mr. Fink or other plan participants, the

Union's complaint seeking confirmation" of the award at that time would present a quite different dispute. *See* Defs.'s Opp'n at 30. The subsidiaries further acknowledge that because their "obligation to provide health benefits to eligible retirees post-expiration is rooted in an expired labor contract, the [Union] presumably could invoke LMRA § 185 in a representative capacity to vindicate an alleged contract violation in the event [that the subsidiaries] made unilateral changes to their benefit plan for [Union] retirees." *Id.* In addition to those important acknowledgments, the Court also notes that, if a dispute arises in the future where the subsidiaries have allegedly violated the contract, the Union may seek confirmation at that time.[3]

### III.    Conclusion

For the foregoing reasons, the Court, at this time, lacks Article III jurisdiction to confirm the arbitration award. An Order will be entered contemporaneously with this Memorandum Opinion.

It is so **ORDERED**.

DATE:  July 8, 2022

CARL J. NICHOLS
United States District Judge

---

[3] The Court notes that it possessed Article III jurisdiction to resolve the subsidiaries' request to vacate the arbitration award because the subsidiaries were suffering an alleged injury, *i.e.*, the existence of an arbitration award with which they disagreed.